IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MANHEIM AUTOMOTIVE FINANCIAL SERVICES, INC.,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MARTEN E. GUTHRIE, et al.,** )<br>)<br>**Defendants.** )<br>) | **CIVIL ACTION**<br>**No. 06-2298-KHV** |

**ORDER**

Manheim Automotive Financial Services, Inc. ("Manheim") brings suit against Marten E. Guthrie, individually and d/b/a Guthrie Wholesale Auto, Dena P. Guthrie and Oklahoma Auto Exchange, LLC ("Oklahoma Auto"), asserting claims arising from a floor plan financing arrangement. Specifically, Manheim sues Oklahoma Auto for conversion (Count IV) and civil conspiracy (Count V). On October 19, 2007, the Court overruled Manheim's motion for partial summary judgment on its conversion claim. See Memorandum And Order (Doc. #71). This matter is before the Court on Plaintiff's Motion To Reconsider Court's Order Of October 19, 2007 Denying Plaintiff's Motion For Partial Summary Judgment Or, In The Alternative, For Leave To File Interlocutory Appeal (Doc. #78) filed October 25, 2007. For reasons stated below, the Court overrules plaintiff's motion.

**I.    Legal Standards**

The Court has discretion whether to grant a motion to reconsider. See Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir. 1988). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. See Major v. Benton, 647

F.2d 110, 112 (10th Cir. 1981); Burnett v. W. Res., Inc., 929 F. Supp. 1349, 1360 (D. Kan. 1996). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. See Voelkel v. Gen. Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan.), aff'd, 43 F.3d 1484 (10th Cir. 1994). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991).

**II.   Analysis**

Manheim asks the Court to reconsider its ruling and find that it is entitled to judgment as a matter of law under Uniform Commercial Code ("U.C.C.") Section 9-315(a)(1).[1] Specifically, Manheim asserts that because the Court found that Oklahoma Auto authorized Guthrie to pledge the eleven cars to his floor plan lender, it has a prior interest in the cars as a matter of law. See Plaintiff's Memorandum Of Law In Support Of Its Motion To Reconsider, Or In The Alternative, For Leave To File Interlocutory Appeal ("Manheim's Memorandum In Support Of Motion To Reconsider") (Doc. #79) filed October 25, 2007 at 3-4.

By its terms, Section 9-315(a)(1) provides that a security interest continues in collateral unless a secured party authorizes its disposition free of the security interest. In its previous order,

---

[1] Section 9-315(a)(1) provides as follows:

> Except as otherwise provided in this article and in paragraph (2) of Section 2-403 of this title . . . a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien[.]

12A Okla. St. Ann. § 1-9-315(a)(1).

the Court found a genuine question of material fact whether Oklahoma Auto retained a security interest in the cars. See Memorandum And Order (Doc. #71) at 15 n.21. Manheim has not addressed this fact or explained how Section 9-315(a)(1) would apply if Oklahoma Auto never had a security interest in the first place.[2] Manheim is not entitled to reconsideration under Section 9-315(a)(1).

Manheim asserts that the Court erred in not finding as a matter of law that it obtained a valid security interest in the cars. See Manheim's Memorandum In Support Of Motion To Reconsider (Doc. #79) at 7-9. Specifically, Manheim argues that the Court's order erroneously implied that under U.C.C. Section 9-203(b), Guthrie must have owned the cars before he could pledge them when in fact, Section 9-203(b) requires only that he have "rights in the collateral or power to transfer rights in the collateral." Manheim's Memorandum In Support of Reconsideration (Doc. #79) at 5. The Court's order stated as follows:

> Under the U.C.C., a security interest becomes enforceable against the debtor and third parties if (1) value has been given; (2) the debtor has rights in the collateral or power to transfer rights in the collateral; and (3) inter alia, the debtor has authenticated a security agreement which provides description of collateral. See 12A Okl. Stat. Ann. § 1-9-203(b).

Memorandum And Order (Doc. #71) at 11-12. The Court's analysis focused on whether Guthrie owned the cars because Manheim's argument focused solely on the issue whether Manheim acquired a security interest because Guthrie owned the cars when he pledged them. See Manheim's

---

[2] Manheim asserts that the "exact nature" of Oklahoma Auto's interest in the cars is irrelevant. See Manheim's Memorandum In Support Of Motion To Reconsider (Doc. #79) at 7-9. This assertion relies on Manheim's argument that it acquired a security interest under Section 9-203(b), however, not a claim that Oklahoma Auto authorized disposition of its security interest under Section 9-315(a)(1). Manheim's argument that it acquired a security interest under 9-203(b) is discussed below.

Memorandum In Support Of Partial Summary Judgment (Doc. #56) at 12-14.  Manheim did not cite Section 9-203(b) or otherwise assert that Guthrie had acquired limited rights in the cars sufficient to pledge them to his floor plan lender.  As discussed above, a motion to reconsider is not an appropriate vehicle to make new arguments which could have been presented originally to the Court.

    Manheim asserts that it proved "a signed security agreement, a broad collateral description covering inventory and most other property rights of Guthrie, and the lending of money to the debtor on the specific collateral at issue."  Id. at 5.  In its previous order, the Court noted that Manheim referred generally to a claim that Guthrie pledged the car titles under the parties' security agreement, but that Manheim offered no analysis regarding the language of the security agreement or any legal authority which allegedly gave rise to a security interest.[3]  See Memorandum And Order (Doc. #71)

---

[3]    With regard to its alleged security interest in the cars, Manheim's motion for partial summary judgment asserted the following facts:

1. Manheim provided floorplan financing to Guthrie pursuant to a series of documents including a security agreement, promissory note and individual guaranty.

2. Guthrie signed a security agreement in favor of Manheim.

3. The security agreement, secured "any indebtedness under th[e] Agreement and any other indebtedness of [Guthrie] to [Manheim]" and gave Manheim a security interest "in all Vehicle inventory, parts and accessories inventory, equipment fixtures, accounts, holdback reserves, manufacturer rebates, and incentive programs, general intangibles of [Guthrie] now owned and hereafter acquired . . . all chattel paper, documents, instruments, monies, residues and property of any kind related to the foregoing."

4. In connection with the above-described floorplan financing, Manheim filed a U.C.C. financing statement against Guthrie.

5. At Guthrie's request, Manheim loaned Guthrie money for the eleven cars.

(continued...)

at 11. Manheim's motion for reconsideration sheds no additional light on the issue whether (or when, or how) its security interest attached to the vehicles in question. Manheim has not shown as a matter of law that its security agreement covered the cars, that its security interest attached under Section 9-203(b), or that Guthrie actually pledged the cars to it. On this record, the Court will not reconsider its order.

Manheim asks the Court to grant it leave to file an interlocutory appeal under 28 U.S.C. § 1292(b).[4] Manheim asserts that the Court should authorize an interlocutory appeal because "the legal issues are clear, and once decided fully and finally, they will resolve the parties' priority in the property at issue and may substantially determine the final outcome of the case." Manheim's Memorandum In Support Of Motion To Reconsider (Doc. #79) at 11. As discussed above, the Court's ruling is based on Manheim's failure to sufficiently develop the factual record and advance

---

[3](...continued)
    6.    As part of his request, Guthrie provided Manheim the original certificates of title for each of the eleven automobiles. Each of the original certificates of title had been signed over by Oklahoma Auto to Guthrie.

Manheim's Memorandum In Support Of Partial Summary Judgment (Doc. #56) at 3.

[4]    Section 1292(b) provides as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

its best legal arguments. The Court's ruling is not based on a controlling question of law as to which substantial ground exists for difference of opinion. Furthermore, the record on appeal would be in precisely the same posture as that presented here. Regrettably, the only way to materially advance the litigation at this juncture is to proceed to trial on the merits. Trial, as opposed to an interlocutory appeal, is clearly best suited to achieve the speedy, just and inexpensive resolution of this case. An immediate appeal under Section 1292(b) is not appropriate**.**

**IT IS THEREFORE ORDERED** that <u>Plaintiff's Motion To Reconsider Court's Order Of October 19, 2007 Denying Plaintiff's Motion For Partial Summary Judgment Or, In The Alternative, For Leave To File Interlocutory Appeal</u> (Doc. #78) filed October 25, 2007 be and hereby is **OVERRULED.**

Dated this 1st day of November, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge